■ MARYKATE REPETTI, Appellant-Respondent, v JOHN REPETTI, Respondent-Appellant. [47 NYS3d 447]—

Appeal by the plaintiff and cross appeal by the defendant from stated portions of a judgment of divorce of the Supreme Court, Nassau County (Geoffrey J. O'Connell, J.H.O.), entered August 6, 2014. The judgment, upon a decision of that court dated December 20, 2013, as amended March 17, 2014, made after a nonjury trial, inter alia, (1) upon the sale of the marital residence, awarded the plaintiff maintenance in the sum of $1,350 per week until and through September 30, 2022, (2) directed that if title to the marital residence did not pass to a bona fide purchaser on or before June 30, 2015, then from July 1, 2015, until title has passed, the parties would be equally responsible for the mortgage, real estate taxes, and real estate insurance, and the plaintiff would be solely responsible for all other expenses related to the property, (3) awarded the plaintiff the sum of $480,000 for her martial share of the defendant's interest in his accounting firm, (4) awarded the plaintiff the sum of $70,171 for her marital share of Congoo, LLC, (5) awarded the plaintiff $5,000 for her marital share of Mass Transmit, LLC, (6) awarded the plaintiff counsel fees in the sum of $72,500, (7) failed to direct the defendant to maintain a dental insurance policy for the parties' unemancipated child, (8) failed to equitably distribute the plaintiff's marital share of Right Angle Research, LLC, and an individual retirement account, and (9) failed to direct the defendant to provide for the payment of college expenses for the parties' unemancipated child.

Ordered that the judgment is modified, on the law, the facts, and in the exercise of discretion, (1) by deleting the provision thereof awarding the plaintiff maintenance in the sum of $1,350 per week until and through September 30, 2022, and substituting therefor a provision awarding the plaintiff maintenance in the sum of $1,350 per week until the first of her remarriage, her attainment of the age of 67 or such age that she would qualify for full Social Security benefits, or her death, (2) by adding a provision thereto directing the defendant to maintain a dental insurance policy for the parties' unemancipated child, (3) by deleting the provision thereof awarding the plaintiff the sum of $70,171 for her marital share of Congoo, LLC, (4) by deleting the provision thereof awarding the plaintiff the sum of $5,000 for her marital share of Mass Transmit, LLC, and (5) by deleting the provision thereof award-

ing the plaintiff counsel fees in the sum of $72,500, and substituting therefor a provision awarding the plaintiff counsel fees in the sum of $45,000; as so modified, the judgment is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.

The plaintiff and the defendant were married in 1984, and have four children together. During the marriage, the defendant was a partner at an accounting firm, while the plaintiff was the primary caregiver for the children and a homemaker. In May 2007, the plaintiff commenced this action for a divorce and ancillary relief. The plaintiff was awarded custody of the parties' youngest and only unemancipated child.

A nonjury trial was conducted to resolve, inter alia, issues of maintenance, child support, and equitable distribution of certain assets. Following the trial, the Supreme Court entered a judgment of divorce which, inter alia, (1) awarded the plaintiff maintenance in the sum of $1,350 per week upon the sale of the marital residence until and through September 30, 2022, (2) did not direct the defendant to provide for the payment of college expenses and to maintain a dental insurance policy for the parties' unemancipated child, (3) awarded the plaintiff the sum of $480,000 for her martial share of the defendant's interest in his accounting firm, (4) awarded the plaintiff the sum of $70,171 for her marital share of the defendant's interest in Congoo, LLC, (5) awarded the plaintiff $5,000 for her marital share of the defendant's interest in Mass Transmit, LLC, (6) directed that if title to the marital residence did not pass to a bona fide purchaser on or before June 30, 2015, then beginning on July 1, 2015, until the sale is completed, the parties would equally share the cost of the mortgage, real estate taxes, and real estate insurance on the marital residence, and the plaintiff would pay all other expenses related to the marital residence, and (7) awarded the plaintiff counsel fees in the sum of $72,500. The plaintiff appeals and the defendant cross-appeals from stated portions of the judgment.

" '[T]he amount and duration of maintenance is a matter committed to the sound discretion of the trial court, and every case must be determined on its own unique facts' " (*Giokas v Giokas*, 73 AD3d 688, 688 [2010], quoting *Wortman v Wortman*, 11 AD3d 604, 606 [2004]; *see Alleva v Alleva*, 112 AD3d 567, 568 [2013]). "The factors to be considered in awarding maintenance include 'the standard of living of the parties during the marriage, the income and property of the parties, the distribution of marital property, the duration of the marriage,

the health of the parties, the present and future earning capacity of both parties, the ability of the party seeking maintenance to become self-supporting, and the reduced or lost lifetime earning capacity of the party seeking maintenance' " (*DiPalma v DiPalma*, 112 AD3d 663, 664 [2013], quoting *Kret v Kret*, 222 AD2d 412, 412 [1995]). Here, the plaintiff's contention that the Supreme Court should have awarded her nondurational maintenance is without merit. However, in light of the parties' ages, the marital standard of living, as well as their present and future earning capacities, the court should have awarded the plaintiff maintenance in the amount of $1,350 per week from the time that title for the marital residence passes to a bona fide purchaser until the plaintiff reaches the age of 67 or such age that she would qualify for full Social Security benefits, or until her remarriage or death (*see Carroll v Carroll*, 125 AD3d 710, 712 [2015]; *Giokas v Giokas*, 73 AD3d at 689; *Baron v Baron*, 71 AD3d 807, 810 [2010]).

When determining a parent's child support obligation, the court " 'may impute income based upon the party's past income or demonstrated future potential earnings' " (*Matter of Abruzzo v Jackson*, 137 AD3d 1017, 1018 [2016], quoting *Matter of Rohme v Burns*, 92 AD3d 946, 947 [2012]). "The court may take into account what the parent is capable of earning by honest efforts, given his [or her] education and opportunities" (*Matter of Abruzzo v Jackson*, 137 AD3d at 1018 [internal quotation marks omitted]). Here, the record supports the Supreme Court's determination to impute income to the plaintiff in the sum of $30,000 per year. Additionally, contrary to the plaintiff's contention, the court did not err in declining to direct the defendant to contribute his pro rata share of the parties' unemancipated child's future college expenses. "The court may direct a parent to contribute to a child's college education pursuant to Domestic Relations Law § 240 (1-b) (c) (7)" (*Bogannam v Bogannam*, 60 AD3d 985, 986 [2009]; *see LaBombardi v LaBombardi*, 220 AD2d 642, 644 [1995]). "However, when college is several years away, and no evidence is presented as to the child's academic interests, ability, possible choice of college, or what his or her expenses might be, a directive compelling [a parent] to pay for those expenses is premature and not supported by the evidence" (*Bogannam v Bogannam*, 60 AD3d at 986; *see Mejia v Mejia*, 106 AD3d 786, 788 [2013]; *Felix v Felix*, 87 AD3d 1106, 1108 [2011]). At the time of the trial, the parties' unemancipated child was 16 years old and was entering his junior year of high school. There was no evidence presented as to his academic interests, his possible choice of college, or what the expenses of college might be. Accordingly, the

plaintiff's request that the court direct the defendant to contribute his pro rata share of the parties' unemancipated child's future college expenses was premature (*see Dochter v Dochter*, 118 AD3d 665, 666 [2014]). However, the court should have directed the defendant to maintain a dental insurance policy for the parties' unemancipated child until his emancipation (*see* Domestic Relations Law § 240 [1] [a]).

"A trial court is vested with broad discretion in making an equitable distribution of marital property, and unless it can be shown that the court improvidently exercised that discretion, its determination should not be disturbed" (*Aloi v Simoni*, 82 AD3d 683, 685 [2011] [internal quotation marks omitted]). "When both spouses equally contribute to a marriage of long duration, the division of marital property should be as equal as possible; however, equitable distribution does not necessarily mean equal distribution" (*Davis v O'Brien*, 79 AD3d 695, 696 [2010]). "Equitable distribution is 'based on the premise that a marriage is, among other things, an economic partnership to which both parties contribute as spouse, parent, wage earner or homemaker' " (*K. v B.*, 13 AD3d 12, 17 [2004], quoting *O'Brien v O'Brien*, 66 NY2d 576, 585 [1985]). "The distribution of marital assets depends not only on the financial contribution of the parties 'but also on a wide range of nonremunerated services to the joint enterprise, such as homemaking, raising children and providing the emotional and moral support necessary to sustain the other spouse in coping with the vicissitudes of life outside the home' " (*K. v B.*, 13 AD3d at 17, quoting *Brennan v Brennan*, 103 AD2d 48, 52 [1984]).

Contrary to the defendant's contention, the Supreme Court providently exercised its discretion in awarding the plaintiff the sum of $480,000, representing a 30% share of the stipulated value of the defendant's interest in his accounting firm and related companies. The award of a 30% share of the stipulated value of the defendant's interest properly accounts for the plaintiff's minimal direct and indirect contributions to the businesses, while not ignoring her contributions as the primary caretaker of the parties' children, which allowed the defendant to focus on the businesses (*see Elias v Elias*, 101 AD3d 938, 939 [2012]; *Wasserman v Wasserman*, 66 AD3d 880, 882 [2009]; *Quinn v Quinn*, 61 AD3d 1067, 1069 [2009]; *Kaplan v Kaplan*, 51 AD3d 635, 637 [2008]).

The Supreme Court erred in awarding the plaintiff a portion of the defendant's interests in Congoo, LLC, and Mass Transmit, LLC. The plaintiff, as the party seeking an interest in those businesses, did not submit sufficient evidence as to the

value of the defendant's interests in those businesses (*see Post v Post*, 68 AD3d 741 [2009]; *Massimi v Massimi*, 35 AD3d 400 [2006]; *Antoian v Antoian*, 215 AD2d 421 [1995]; *see also Halley-Boyce v Boyce*, 108 AD3d 503 [2013]; *Alper v Alper*, 77 AD3d 694 [2010]). Additionally, the plaintiff failed to demonstrate that the defendant's interests in Congoo, LLC, and Mass Transmit, LLC, could be distributed in-kind by transferring one-half of his interest to her, by assigning one-half of his interest to her, or by distributing one-half of his yearly distributions to her (*see Herrmann v Herrmann*, 132 AD2d 972 [1987]). Accordingly, the plaintiff was not entitled to equitable distribution of Congoo, LLC, or Mass Transmit, LLC. The court properly declined to award the plaintiff a share of the defendant's interest in Right Angle Research, LLC, because the plaintiff failed to submit proof of the extent of the defendant's interest in that business, or of the value of his interest in that business (*see Post v Post*, 68 AD3d 741 [2009]).

Based upon the size of the former marital residence, the costs associated with running the former marital residence, including the mortgage, real estate taxes, real estate insurance, and utilities, and the fact that the parties' unemancipated child was scheduled to graduate from high school in May or June 2015, the Supreme Court providently exercised its discretion in directing that beginning on July 1, 2015, if the former marital residence had not yet been sold, the parties would be equally responsible for the mortgage, real estate taxes, and real estate insurance, and the plaintiff would be solely responsible for all other expenses related to the property (*see McCoy v McCoy*, 117 AD3d 806, 809 [2014]; *Goldblum v Goldblum*, 301 AD2d 567, 569 [2003]).

Contrary to the plaintiff's contention, she was not entitled to equitable distribution of an individual retirement account because there was insufficient evidence about that account, including whether it had a value at the time of the commencement of the action (*see Osman v Osman*, 142 AD3d 978, 980 [2016]; *Sutaria v Sutaria*, 123 AD3d 909, 911 [2014]).

Under the circumstances of this case, we reduce the award of counsel fees to the plaintiff from the sum of $72,500 to the sum of $45,000.

The parties' remaining contentions either are without merit or need not be addressed in light of our determination. Chambers, J.P., Hall, Miller and Connolly, JJ., concur.